In re STORAGE TECHNOLOGY CORP. SECURITIES LITIGATION.

No. 84–M–1981.

United States District Court, D. Colorado.

Nov. 18, 1986.

Nicholas E. Chimicles, Greenfield & Chimicles, Haverford, Pa., Gerald L. Bader,

Jr., Bader & Cox, Denver, Colo., for plaintiffs.

Harry T. Daniels, Hale & Dorr, Boston, Mass., for defendants Officers/Directors.

Charles S. Battles, Jr., Gibson, Dunn & Crutcher, Denver, Colo., for defendants Outside Directors.

James E. Nesland, Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., for defendant Price Waterhouse.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The plaintiffs in these actions alleged six claims for relief, designated as "counts", in their consolidated amended complaint (complaint), filed January 31, 1985. The first five were brought under various sections of the Securities Act of 1933 (1933 Act) and the Securities Exchange Act of 1934 (1934 Act). The sixth was a pendent claim for negligent misrepresentation in connection with the sale of securities. The defendants are former or current directors and officers of the Storage Technology Corporation (STC), outside STC directors, and Price Waterhouse, STC's auditing firm.

Pursuant to the Memorandum Opinion and Order in *In re Storage Technology Corp. Securities Litigation,* 630 F.Supp. 1072 (D.Colo.1986), this court dismissed Counts III, V, and VI of the complaint. *In re Storage Technology Corp. Securities Litigation,* 630 F.Supp. at 1081. Remaining are Count I, which alleges a violation of section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder; Count II, which alleges a violation of section 11 of the 1933 Act; and Count IV, asserting liability under section 15 of the 1933 Act. Now before the court is the Plaintiffs' Amended Motion for Class Action Determination under Fed.R.Civ.P. 23(a) and (b)(3), filed May 27, 1986. Norman Kamerman, the plaintiff in Civil Action No. 84–M–1995, separately seeks certification of a subclass within the proposed section 10(b) class.

## Proposed Section 10(b) Class

■ This proposed class consists of all persons who have been damaged by purchases of STC common stock during the 28 month period from June 7, 1982, until October 8, 1984. Although the exact size of the class is unknown, the plaintiffs estimate the number at several thousand. Complaint ¶ 13. The plaintiffs allege 26 different misrepresentations during the relevant period. *Id.,* ¶ 71(a)–(z).

The plaintiffs' claims are based on a fraud on the market theory of section 10(b) liability. Under this theory, a plaintiff may rely on the integrity of the market without proving his own reliance on the defendant's conduct. The theory "... is grounded on the assumption that the market price reflects all known material information and that material misinformation will cause the artificial inflation or deflation of the market price." *In re Storage Technology Corp. Securities Litigation,* 630 F.Supp. at 1077. *See also, Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

This court has accepted the fraud on the market theory in the open market context, and finds it applicable in this case. *In re Storage Technology Corp. Securities Litigation,* 630 F.Supp. at 1078. Proof of reliance by individual plaintiffs on particular misrepresentations is therefore unnecessary.

The plaintiffs contend that all 26 of the allegedly false statements were made to further a common scheme to deceive the investing public and artifically inflate the price of STC securities on the open market. They argue that this common nucleus of operative fact makes the case suitable for certification as a class action.

The defendants argue that the proposed class is too broad and is void of any common nucleus. In their view, the alleged misrepresentations concern different STC projects which are not sufficiently related to be considered a common scheme. Additionally, the STC participation was different. For example, the Optical Disk re-

search project was undertaken by Storage Technology Partners II, an STC-affiliated limited partnership described by defendants' counsel as an "off-balance sheet entity". The defendants further argue that there was a varying "quantum of hype" throughout the 28 month period, that the case is based on too many alleged misrepresentations, and that it is too big to manage.

Fed.R.Civ.P. 23 reads in pertinent part:

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ...

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include ... (D) the difficulties likely to be encountered in the management of a class action.

As a general matter, class actions are favored in securities fraud actions involving numerous plaintiffs. *Blackie v. Barrack*, 524 F.2d at 902, *In re Am International, Inc. Securities Litigation*, 108 F.R.D. 190, 198 (S.D.N.Y.1985). In fraud on the market claims, where individual questions of reliance are eliminated, the class action is even more appropriate. *Lipton v. Documation, Inc.*, 734 F.2d 740, 745 (11th Cir.1984), *cert. denied*, 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985) (fraud on market finds greatest justification when applied to class actions alleging fraud af-

fecting security prices on developed open market), *Levinson v. Basic Inc.*, 786 F.2d 741, 749–750 (6th Cir.1986), *T.J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma Irrigation Fuel Authority*, 717 F.2d 1330, 1332 (10th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984), *Blackie v. Barrack*, 524 F.2d at 906, *Foltz v. U.S. News & World Report*, 106 F.R.D. 338, 341 (D.D.C.1984).

In *Blackie v. Barrack, supra,* the court upheld the certification of a class consisting of purchasers allegedly misled by 45 different documents over a 27 month period. The Court rejected the defendants' arguments that the class should be denied due to differences in sophistication among the investors and in the proof upon which each purchaser would have to rely:

Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d at 902. *See also Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

Differences in sophistication, etc., among purchasers have no bearing in the impersonal market fraud context, because dissemination of false information necessarily translates through market mechanisms into price inflation which harms each purchaser identically.

*Blackie v. Barrack*, 524 F.2d at 905.

In *In re Unioil Securities Litigation*, 107 F.R.D. 615 (C.D.Cal.1985), the court certified a class consisting of the open market purchasers of Unioil stock between August 1983 and February 1984. Relying on a fraud on the market theory, the plaintiffs alleged an unspecified number of misrepresentations in press releases, annual reports, and SEC filings. With respect to the

Rule 23(b)(3) factors, the court found that in a claim based "on a common nucleus of misrepresentations, material omissions and market manipulations, common questions predominate over any differences between individual class members with respect to damages, causation or reliance." *Unioil Securities Litigation,* 107 F.R.D. at 622.

In *In re Am International, Inc. Securities Litigation,* 108 F.R.D. 190 (S.D.N.Y. 1985), the court certified a class consisting of all purchasers of AMI stock in the two year period from September 1979 to September 1981. The bases of the alleged fraud were AMI's 1979 and 1980 annual reports and form 10–K's, and interim financial reports and form 10–Q's. The court held that the common question of the defendant's fraud predominated over individual questions, and the potential size of the class made a class action superior to any other means of proceeding. *Am International Securities Litigation,* 108 F.R.D. at 192, 198.

In *Kolin v. American Plan Corporation,* CCH Fed.Sec.L.Rept. ¶ 92,728 (E.D.N.Y.1986), the court certified a class consisting of the purchasers of APC stock in the 27 month period from March 1982 to June 1984. The alleged fraud was contained in an unspecified number of documents, including APC's 1982 annual report, 1983 form 10–K, and various press releases. The court did not address the issue of manageability. It certified the class on the finding that common questions of law or fact existed, Fed.R.Civ.P. 23(a)(2), and that these questions predominated, Fed.R.Civ.P. 23(b)(3):

> Plaintiffs have alleged a common scheme to deceive the investing public through a series of related documents which were both quantitatively and qualitatively misleading. The object of the scheme was at all times to inflate artificially the market price of AP stock by a false portrayal of AP's financial data. Defendants' argument [that the alleged false representations over the 27 month period must be judged by distinctive factual backgrounds which predominantly involve individual questions] ... amounts to little more than a statement that the means of attaining that objective changed throughout the class period, thereby establishing different claims of causation and reliance. This does not alter the commonality of the questions of either law or fact or establish that the individual questions predominate since it was the common scheme in which all defendants participated and pursuant to which each alleged misrepresentation was made.

*Kolin,* CCH Fed.Sec.L.Rept. at 93,541.

In *Zandman v. Joseph,* 102 F.R.D. 924 (N.D.Ind.1984), the court denied a proposed stock purchaser class covering a 27 month period and alleging 57 fraudulent statements. The court accepted the fraud on the market theory for purposes of the plaintiffs' motion for class certification, *Zandman,* 102 F.R.D. at 930, but rested its denial of the class on the findings that the named plaintiffs were subject to unique defenses and that they would not make adequate class representatives. The court also found a lack of commonality, stating that the company's announcements differed markedly as the development of its product progressed.

> [T]he cause of action possessed by an individual who bought Sullair stock based on the September 24, 1980 press release heralding the successful completion of the first downhole test and the cause of action of one purchasing stock on the basis of Sullair's First Quarter Report in 1982 detailing the slow development and setbacks in the testing program would be substantially different in terms of falsity, materiality, and scienter.

*Zandman,* 102 F.R.D. at 929.

In *Trattner v. American Fletcher Mortgage Investors,* 74 F.R.D. 352 (S.D.Ind. 1976), the court denied certification of a class covering a 27 month period and alleging 47 different fraudulent public statements. The court rejected the plaintiffs' "common and continuing course of conduct" theory of liability. Because "differing circumstances and different facts ...

must be proved with respect to the claims of the various members of the proposed class", *Trattner*, 74 F.R.D. at 356, individual questions of fact predominated.

In *J.H. Cohn & Co. v. American Appraisal Association, Inc.*, 628 F.2d 994 (7th Cir.1980), the court affirmed the denial of a proposed securities purchaser class covering a 33 month period and alleging "several" oral and written communications issued during the relevant period. As in *Zandman*, factual variations during the relevant time period "undercut[ ] the predominance of any common course of conduct." *J.H. Cohn*, 628 F.2d at 998, n. 3.

> The alleged material misrepresentations were contained in several different oral and written communications issued at various times during this period. Individual class members would thus have to establish that information available to them prior to their purchases contained material misrepresentations or omitted to state material facts. A purchaser following only the June 1971 prospectus would face a different question of proof on the materiality issue than one purchasing in 1974 after a great deal more information concerning American Appraisal was available. Likewise, on the issue of scienter, a purchaser early in the period would face different proof concerning the defendants' willfulness or recklessness in issuing or omitting to issue material information than a purchaser later in the period.

*J.H. Cohn*, 628 F.2d at 998 (footnote omitted).

The cases in which courts denied class certification all cite the varying factual or legal issues within the proposed class. However, these cases do not appear to accept the fraud on the market theory. In *J.H. Cohn*, for example, the court implicitly rejected the fraud on the market theory. *J.H. Cohn*, 628 F.2d at 998, n. 3. The court in *Trattner* did not discuss fraud on the market, but explicitly rejected the plaintiffs' continuing course of conduct theory. *Trattner*, 74 F.R.D. at 356. In *Zandman*, the court purported to accept the fraud on

the market theory, but the above-quoted language in that opinion, speaking in terms of individual reliance on particular fraudulent statements, casts doubt on that assertion. Moreover, the court's denial of the class relied heavily on adequacy and typicality grounds.

Having accepted the fraud on the market theory, under which many individual factual questions are eliminated, this court finds that common questions of law and fact exist regarding the defendants' allegedly fraudulent conduct over the relevant 28 month period, Fed.R.Civ.P. 23(a)(2), and that these questions form a common nucleus sufficient to meet the predominance requirement of Rule 23(b)(3). While there may not have been a consistent "quantum of hype" throughout the 28 month period, and while the alleged misrepresentations relate to different STC projects, there is sufficient commonality to support class certification.

■ The other prerequisites to class certification under Rule 23(a) and (b)(3) are likewise met. With an estimated several thousand members, the class satisfies the numerosity requirement of Rule 23(a)(1). With respect to the requirement of typicality, this court finds that those plaintiffs found to be adequate representatives of the class, *infra*, at 119–120, have asserted claims which are typical of the class. The major issue presented is whether the defendants violated the federal securities laws. The plaintiffs are not required to prove individual reliance on a particular misrepresentation. Although certain factual variations may exist among the plaintiffs' claims, these variations are insufficient to defeat the class on typicality grounds. Fed.R. Civ.P. 23(a)(3).

■ This court further finds that the adequacy requirement of Rule 23(a)(4) is satisfied. The requirement that the class representatives fairly and adequately protect the interests of the class may be regarded as a threshold question of constitutional dimension, since it would violate due process to bind a class member to a ruling against inadequate class representatives.

*See, Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–179, 94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732 (1974), *Foltz,* 106 F.R.D. at 341, *Folding Cartons, Inc. v. American Can Company,* 79 F.R.D. 698, 700–701 (N.D.Ill.1978). A finding of adequacy includes the findings that the plaintiffs are knowledgeable as to the status and underlying legal basis of the action, that they are willing and able to pay notification and other costs, that they will diligently pursue their claims, and that their interests are not antagonistic to the interests of the class. Additionally, the plaintiffs' counsel must be competent and experienced in the particular substantive area involved. *See, Eisen,* 417 U.S. at 177–179, 94 S.Ct. at 2152–2153, *Monarch Asphalt Sales Co., Inc., v. Wilshire Oil Company of Texas,* 511 F.2d 1073, 1077 (10th Cir.1975), *Am International,* 108 F.R.D. at 198, n. 10, *In re Goldchip Funding,* 61 F.R.D. 592, 594–495 (M.D.Penn.1974).

It is true that certain of the plaintiffs would not make adequate class representatives. Five plaintiffs—Harry Jacobs, Sidney Sobel, Samuel Sinay, John MacDonald and Emma MacDonald—failed to appear for their depositions. The failure to comply with proper discovery is a sufficient basis for this court to conclude that these plaintiffs would not adequately represent the class. *Norman v. Arcs Equities Corp.,* 72 F.R.D. 502, 506 (S.D.N.Y.1976).

Other plaintiffs are also inadequate. Minnie June Ryan, Lee W. Ryan and James H. Scoville are current or former employees of STC. During the relevant time period, Mr. Scoville purchased STC stock on the open market as well as through STC's employee stock option plan. He relied on non-public information in making his purchases. His interests may therefore be adverse to the interests of other plaintiffs, and he may be subject to unique defenses. In addition, Mr. Scoville, and the Ryans, appear to be in no position to provide the financial resources necessary to assure vigorous prosecution.

Plaintiffs Florence Levitt, Lewis Scharff, Richard Scharff, Aaron Scharff and Joseph Levit are not adequate. At her deposition, Ms. Levitt appeared unaware of even the most material aspects of this action. She did not know the difference between her California complaint and the consolidated amended complaint, nor why these particular defendants are being sued. She described Jesse I. Aweida as "the chairman of stockmen or whatever." She appeared to have no conception of the class of people she purportedly represents. She believes her sole duty to the class is to pay certain costs if the suit is unsuccessful. She seemed to lack interest in the case. Deposition of Florence Levitt, at 6, 26, 28, 30, 32, 42–43, 47, 50.

Lewis Scharff, Richard Scharff and Aaron Scharff all became plaintiffs in this action at the suggestion of their brother, Jonathan Scharff. All three retained the same law firm as Jonathan. Richard Scharff does not appear knowledgeable about this action. His shares were purchased by a trustee on his behalf; he never actually held shares in STC. He received the assets of the trust in June, 1985, upon his graduation from college. His ownership of STC stock and his role in the prosecution of this action are too passive to assure vigorous prosecution. Deposition of Richard Scharff, at 11–13, 25–28, 32. Although Lewis Scharff and Aaron Scharff have an adequate understanding of this action, that understanding appears to come from their brother, Jonathan Scharff. It was not their idea to sue. Their presence as plaintiffs appears to be due to his interest in this case. This court is not convinced that they would vigorously pursue the claims of the class. Deposition of Lewis Scharff, at 31–32, 35–37, 82–84, 86–88; Deposition of Aaron Scharff, at 16–17, 19–21.

Joseph Levit has been represented by Greenfield & Chimicles as a named plaintiff in seven other civil actions. He did not pay attorneys' fees or costs in any of those actions. He has a social relationship with Mr. Greenfield. He is not very knowledgeable as to the status of this lawsuit. Mr. Levit does not appear to be exercising inde-

pendent judgment in this case, and the class is entitled to more than blind reliance on counsel. Deposition of Joseph Levit, at 11–12, 16–17, 19–21, 23, 25, 30–31, 38–40.

However, other plaintiffs have demonstrated that they would be adequate class representatives. Alexander Katechis appears sufficiently involved in this action. Although he did not know the specific misrepresentations alleged in the complaint, he understands the underlying legal basis of this action. He knows that certain claims have been dismissed by this court. He knows that in his first complaint he was the only named plaintiff whereas in the consolidated amended complaint there are numerous plaintiffs and Price Waterhouse is named as a defendant. He is familiar with the STC products which were the subject of the alleged misrepresentations, he understands his obligation to pay the costs of this action, and he is aware that the law firm of Greenfield & Chimicles has been designated lead counsel. Deposition of Alexander Katechis, at 21, 41–44, 47–48, 52–53, 55–57, 59, 66.

Bernard Orlofsky, too, understands the legal basis of this lawsuit. He understands that his original complaint was superceded by the consolidated amended complaint. He is aware of his obligation to share payment of costs, although he was told those costs would likely be spread among all 17 class representatives. He understands his duty to represent class members. Although he defers to his attorneys on most tactical questions, he is angry about STC's alleged misrepresentations and quite interested in the outcome of this case. He will make an adequate representative. Deposition of Bernard Orlofsky, at 14, 17–24.

Jonathan Scharff will also make an adequate class representative. He appears interested in this litigation, and he has a good understanding of the facts and status of the case. He knows that as a class representative he would be responsible for certain costs. Mr. Scharff's approximately nine months of employment as a securities paralegal with the law firm of Wolf, Haldenstein, Adler, Freeman & Herz and his subsequent retention of that firm as counsel in this action does not mean that his interests are antagonistic to the interests of the class. Deposition of Jonathan Scharff, at 5, 31–33.

James Spear is a CPA and a non-practicing attorney. Although he is suing as a trustee, he is also a beneficiary of the trust. His interest in the outcome of this action is therefore sufficient. He understands the basis of the claims against the defendants, and is aware of his duty to pay costs. Deposition of James A. Spear, at 3, 6, 24–25, 39–41, 43–44. He also understands his fiduciary duty toward the class members, as evidenced by his deposition statement that "once it [this action] becomes a class action, I have to look at it not only as my benefit as a plaintiff, but all the members of the class." *Id.*, at 43–44. Mr. Spear would fairly and adequately represent the class.

Hilda Stoller will also make an adequate representative. She understands that allegedly misleading statements by defendant Jesse I. Aweida and others form the legal basis for this action. She knows that the defendants are the officers and directors of STC, and she knows that Price Waterhouse acted as STC's auditing firm. She knows about the STC products which were the subject of the alleged misrepresentations, including the fact that the disks and tape drives STC was developing were intended to be IBM compatible. She is aware that the class must be notified, and that she would be responsible for paying the notice if the lawsuit fails. She appears willing and able to pay her share of these costs. Deposition of Hilda Stoller, at 19–21, 23–24, 28–29, 31–35, 39–43. There are, therefore, plaintiffs who will adequately represent the proposed class. Additionally, having reviewed the experience and commitment to this case of the law firms of Greenfield & Chimicles and Bader & Cox, this court finds them to be adequate counsel.

Lastly, a class action is the better alternative available at this time. Fed.R.Civ.P. 23(b)(3). The difficulties in class manage-

ment which may arise are not grounds for refusing now to certify the class. *See, Blackie v. Barrack,* 524 F.2d at 909, *Unioil Securities Litigation,* 107 F.R.D. at 622, *Foltz,* 106 F.R.D. at 341–342. Management problems which may arise in both pre-trial and trial proceedings may be the subject of further action by the court under Rules 16, 23(d)(2), 42(b), and 56(d).

### Proposed Kamerman Subclass

■ Mr. Kamerman moves separately to certify a subclass consisting only of those who purchased STC common stock between May 1, 1984 and October 8, 1984. Mr. Kamerman asserts that this subclass will be concerned only with statements made by defendant Jesse I. Aweida on May 1, 1984, which appeared in the May 2, 1984 Wall Street Journal, one day after the same publication reported STC's statement that the company would sustain a first quarter 1984 loss of $16,700,000.

As does the larger section 10(b) class, Mr. Kamerman's claim employs a fraud on the market theory:

> The position of the Kamerman class is that Aweida's lulling statement of May 1, 1984 *alone* served to maintain the prices of STC's stock at artificially high levels after STC's announcement the day before that it would sustain a loss of $16,-700,000 for its 1984 first quarter. Brief of Plaintiff Kamerman in Support of the Certification, Pursuant to Rule 23(c)(4)(B), of a Separate Rule 23(b)(3) Subclass, at 7 (emphasis in original).

This court is not persuaded that the formation of this narrow subclass is either necessary or desirable at this time. The relevant time period of the certified section 10(b) class encompasses Mr. Kamerman's time period, and although the statements mentioned in the Wall Street Journal article of May 2, 1984 are not among the 26 misrepresentations alleged by the section 10(b) class, there is no basis for believing that Mr. Kamerman's interests will not be diligently pursued by counsel for the class.

### Proposed Section 11 Class

■ Count II of the complaint alleges a violation of section 11 of the 1933 Act and asks certification of a subclass consisting of all current or former STC employees who purchased STC stock through the company's employee stock option plan (ESOP) between June 7, 1982 and October 8, 1984. Complaint, ¶ 88. The alleged misrepresentations are contained in four separate registration statements filed with the Securities and Exchange Commission between February 22, 1982 and February 3, 1984. *Id.,* ¶¶ 89–93. The only representative of this proposed subclass is Mr. James H. Scoville, a former STC employee whose open market purchases entitle him to membership in the section 10(b) class and whose ESOP purchases occurred under only one of the four registration statements.

This court finds that the proposed section 11 class fails because the class representative would not adequately protect the interests of the class, Fed.R.Civ.P. 23(a)(4), and because common questions of law or fact do not predominate, Fed.R.Civ.P. 23(b)(3).

Because Mr. Scoville is able to pursue his claims in the section 10(b) class, he may lack the requisite incentive to prosecute the claims of this subclass. Moreover, because he purchased under only one of the stock option plans, he may not seek to protect the interests of those STC employees who purchased under the other plans. This court therefore finds that Mr. Scoville would not adequately represent the entire proposed class.

■ While the fact that the adequacy requirement of Rule 23(a) is not met is alone sufficient to defeat the proposed class, the class also fails to satisfy the predominance requirement of Rule 23(b)(3).

Section 13 of the 1933 Act reads:

> No action shall be maintained to enforce any liability created under section 11 ... unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... 15 U.S.C. § 77m.

This lawsuit was originally filed on October 9, 1984. The allegedly false registra-

tion statements were filed with the Securities and Exchange Commission on February 22, 1982, November 4, 1982, January 10, 1983, and February 3, 1984. Complaint, ¶¶ 90–93. To avoid the section 13 statute of limitations defense, each plaintiff will have to show he did not know, and should not be held to have known, of the false statement or omission until on or after October 9, 1983, one year before this action was brought. The answer to this critical question will vary among the plaintiffs. It will depend upon when each plaintiff actually learned of the falsehood or omission. It will depend upon each plaintiff's position within and access to inside information in the company.

In addition, the section 11 claims involve individual questions of reliance on a fraudulent registration statement. These individual questions of reliance are obviated in the section 10(b) class by the court's acceptance of the fraud on the market theory. For example, employees who actually worked on projects which eventually failed will have different proofs of reliance from employees without inside knowledge. This court therefore finds that while some common questions of law and fact do exist, Fed.R.Civ.P. 23(a)(2), these questions do not predominate over individual questions, Fed.R.Civ.P. 23(b)(3).

Because the proposed section 11 subclass fails to meet the requirements of Rule 23(a) and (b)(3), the motion for certification of a section 11 ESOP subclass is denied. Any ESOP purchaser who also bought on the open market is eligible to join the section 10(b) class. STC employees who purchased only through their ESOP will have to pursue their claims individually.

Upon the foregoing, it is

ORDERED, that the plaintiffs' motion for certification of a section 10(b) class is conditionally granted, and it is

FURTHER ORDERED, that the plaintiff Norman Kamerman's motion for a separate subclass is denied, and it is

FURTHER ORDERED, that the plaintiffs' motion for a section 11 ESOP subclass is denied.