In re INTELCOM GROUP, INC. SECU-
RITIES LITIGATION, This Docu-
ment Relates to All Actions.

Civ. A. No. 95–D–1166.

United States District Court,
D. Colorado.

Oct. 10, 1996.

Robert J. Dyer, III, Charles W. Lilley, Kip B. Shuman, Denver, CO.

Leonard Barrack, Barrack, Rodos & Bacine, Philadelphia, PA.

Michael D. Glaser, Dennis A. Graham, Michael D. Murphyr, Hopper & Kanouff, P.C., Denver, CO.

Jonathan D. Seigfried, Pamela C. Tames, Reid & Preist, LLP, New York City.

Lester C. Houtz, Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO.

Richard Bemporad, David C. Harrison, Sherrie Brown, Lowey Dannenberg Bemporad & Selinger, P.C., White Plains, NY.

Alfred B. Wolf, Raymond F. Mickelwright, Wolf & Slatkin, Denver, CO.

Gerald L. Bader, Jr., Jeffrey M. Villanueva, Bader & Villanueva, Denver, CO.

Lee Squitieri, Mark C. Gardy, Joshua M. Lifshitz, Abbey & Ellis, New York City.

William S. Lerach, Alan Schulman, Sally Blackman, Milberg Weiss Bershad Hynes & Lerach Law, San Diego, CA.

Alfred G. Yates, Jr., Pittsburgh, PA.

## MEMORANDUM OPINION & ORDER

DANIEL, District Judge.

### I. INTRODUCTION

In this securities fraud action, Plaintiffs, through their First Amended Class Action Complaint, assert a claim for violation of Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. This Court has jurisdiction over the claim pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 78aa. This matter is before the Court on Plaintiffs' Motion for Class Certification filed March 18, 1996. By Order dated November 15, 1995, the Court consolidated four existing actions against IntelCom for all pretrial purposes and designated the First Amended Complaint in *Manoff v. IntelGroup, Inc. et al.*, 95–D–1166, as the operative complaint. The Order stated that the case would thereafter be known by the caption of this Order.

After conducting a hearing on the class certification issue on October 8, 1996 and reviewing the parties' briefs and the relevant legal authorities, I conclude that Plaintiffs' Motion for Class Certification should be granted for the reasons set forth below.

### II. CLASS ACTIONS IN GENERAL

A class action is a unique procedural device designed for those peculiar circumstances where factual and legal issues are common to a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982). The principal justification for a class action is the saving of resources—i.e. judicial economy—offered to both the parties and the court. *Id.* In general, securities claims are particularly well suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation. *In re Storage Technology Corp. Sec. Litig.*, 113 F.R.D. 113, 115 (D.Colo.1986) ("As a general matter, class actions are favored in securities fraud actions involving numerous plaintiffs."); *See also Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3rd Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1781, at 28 (1986).

In order to maintain a class action, Plaintiffs must satisfy all the requirements of Fed.R.Civ.P. 23.[1] *Kelley v. Mid–America Racing Stables, Inc.*, 139 F.R.D. 405, 408 (W.D.Okla.1990). The determination of whether they have done so is a matter within my sound discretion. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982), *cert. de-*

---

**1.** More precisely, plaintiffs must satisfy the four prerequisites set forth in Rule 23(a)—referred to in shorthand as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation—as well as one of the requirements enumerated in Rule 23(b). In this instance, plaintiffs' seek class status under Rule 23(b)(3), which requires that common questions of fact or law predominate and that a class action be superior to other methods of adjudication.

*nied*, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). Certification is appropriate only if I am content, "after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372. However, in ruling on Plaintiffs' motion for class certification under Rule 23, my inquiry is limited to whether the requirements of Rule 23 have been satisfied. I may not consider the underlying merits of the claim. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir.1975); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Further, when considering a motion for class certification, the allegations of the complaint must be accepted as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

■ The decision to grant or deny class certification necessarily entails weighing the practical and prudential considerations raised by the particular facts of each case. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988). "In making the decision, the courts have [generally] erred in favor of certification since the decision is not set in stone, but is subject to later modification." *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 188 (D.Kan.1991) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)); *In re Storage Technology Corp. Sec. Litig.*, 630 F.Supp. 1072, 1077 (D.Colo.1986).

## III. *FACTS*

Plaintiffs are purchasers of the common stock of IntelCom Group, Inc. ("IntelCom"). IntelCom is a competitive access provider ("CAP") that competes with the regional operating Bell companies by enabling high volume users of telephone services to connect their internal telephone and data transmission systems directly to their long distance carriers, thereby bypassing all or most of the local telephone company's network. IntelCom bills itself as a "carrier's carrier," with nearly all of its CAP revenues derived from long distance carriers such as AT & T, Sprint and MCI.

Plaintiffs allege that IntelCom and certain of its officers and directors caused or permitted IntelCom to issue materially false and misleading public statements in press releases, public reports and filings with the SEC concerning IntelCom's 51%–owned subsidiary, Fiber Optic Technologies, Inc. ("FOTI"). Plaintiffs contend that in its public filings and elsewhere, IntelCom continuously promoted the strategic value of the acquisition, identifying FOTI as the entity "through which the company conducts most of its network systems integration business" and which accounts for more than half of IntelCom's revenues. (Motion for Class Certification, p. 6). This promotion was allegedly made despite the fact that IntelCom knew when it purchased FOTI that the federal government was threatening FOTI with debarment. Plaintiffs contend that not only was the threatened debarment not disclosed in IntelCom's public filings, but that IntelCom made other misrepresentations and omissions which served to artificially inflate the market price of IntelCom common stock. Among other things, these misrepresentations included the fact that FOTI: (1) was suspended from accepting contracts from the federal government in March of 1994; (2) was debarred from federal government contracting in July 1994; and (3) had violated the terms and conditions of the debarment by submitting bid proposals and extending, modifying, and obtaining federal contracts.

Plaintiffs contend that concealment of the debarment was highly significant in light of IntelCom's critical need to raise funds from outside sources. By virtue of these alleged misrepresentations, Plaintiffs claim that IntelCom was able to successfully complete a $74 million secondary public offering of common stock in October 1994. Plaintiffs further allege that had the truth been disclosed, the public offering could not have taken place at all or could only have taken place at a price far below the price obtained for the stock.

On April 6, 1995 after the close of trading, IntelCom allegedly disclosed for the first time FOTI's suspension, debarment and violations of the debarment order. IntelCom further disclosed that potential fines and

penalties against FOTI "could have a material adverse effect on IntelCom's financial condition and results of operations." Finally, IntelCom announced that it was making certain management changes at FOTI and was considering alternatives regarding the restructuring of its ownership interest in FOTI. On April 7, 1995, IntelCom's stock declined from $12 1/4 per share to $10 3/4 per share.

On May 10, 1995, the *Dow Jones News Wire* reported that IntelCom had been forced to postpone a critical $150–$200 million debt offering as a direct result of the uncertainties arising from the FOTI debarment. The common stock then declined in value from $9 1/8 to $7 15/16 per share. On May 16, 1995, IntelCom filed SEC Form 12B–25 to delay reporting its second quarter financial results. Two days later, IntelCom filed its Report on SEC Form 10–Q for the second fiscal quarter which allegedly revealed, among other things, the tremendous potential liability arising from FOTI's illegal conduct, the establishment of a $500,000 reserve as the minimum amount of fines and penalties that could be asserted against IntelCom as a result of FOTI's conduct, additional serious financial reporting problems at FOTI, and the deterioration of IntelCom's financial condition resulting from the postponement of its debt financing. The 10–Q also disclosed that IntelCom was under investigation by the SEC as a result of alleged improprieties at FOTI.

Plaintiffs, therefore, assert that full disclosure of the debarment had devastating implications for IntelCom. As a direct result thereof, Plaintiffs allege that the share price of IntelCom dropped from a high of $17 per share to a low of $7–15/16 per share on May 10, 1995, resulting in substantial losses for Plaintiffs. The alleged material misrepresentations made by Defendants for which Plaintiffs seek to recover thus spanned from May 16, 1994 through and including May 10, 1995. The proposed class consists of all persons and entities who purchased or otherwise acquired shares of stock of IntelCom during the period from May 16, 1994 through May 10, 1995 (the "Class Period").[2] Excluded from the class are the Defendants, members of each Defendants' family, any entity in which Defendants have a controlling interest or is a parent, subsidiary or affiliate or is controlled by IntelCom, and the officers, directors, employees, affiliates, agents, legal representatives, heirs, predecessors, successors and assigns of any of the Defendants.

Plaintiffs contend that class certification is appropriate because Defendants' misconduct caused similar damages to purchasers of IntelCom stock during the Class Period. Moreover, Plaintiffs' allege that their claims are based on a common legal theory in that IntelCom and certain of its officers and/or directors are alleged to have violated Sections 10(b) and 20(b) of the Securities Exchange Act and Rule 10b–5. Finally, Plaintiffs contend that this action is substantially similar to numerous securities cases that have been certified as class actions in this and other Circuits in the United States.

Defendants contest that class certification is appropriate as to purchasers of stock on or after April 7, 1995 because of IntelCom's disclosure of all the relevant facts about the FOTI debarment in an April 6, 1995 press release. Defendants contend that the class representatives' claims, who purchased stock prior to April 6, 1995, are not typical of the purchasers after April 6, 1995 because of this disclosure. Thus, Defendants argue that the Plaintiffs cannot adequately represent such subsequent purchasers. In short, Defendants contend that since full disclosure was made, the class should not be certified or, in the alternative, the Court must limit the class to purchasers of IntelCom stock on or before April 7, 1995.

## ANALYSIS

### A. *Rule 10b–5 Actions and the Requirement of Reliance*

■ In order to establish a prima facie case under § 10b and Rule 10b–5, a plaintiff

---

**2.** The class period originally sought to be certified by the Plaintiffs was through May 16, 1995. Plaintiffs then sought to amend the class period to end on May 10, 1995, which amendment was granted by the court. Thus, although Plaintiffs'

Motion also addresses actions that occurred between May 10 and May 16, the Court does not address this period further since it is no longer relevant to the class certification issues.

must plead and eventually prove the following: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which plaintiff reasonably relied, and (5) which is the proximate cause of the losses sustained. *Simpson v. Specialty Retail Concepts,* 149 F.R.D. 94, 99 (M.D.N.C.1993); *cf. Zobrist v. Coal–X, Inc.,* 708 F.2d 1511, 1516 (10th Cir.1983) ("In a misrepresentation case under rule 10b–5, a plaintiff generally must establish that in connection with the purchase or sale of a security, the defendant, with scienter, made a false representation of a material fact upon which the plaintiff justifiably relied to his or her detriment.").

■ As to the fourth element cited above—reliance—the plaintiff may allege that their losses were caused by either direct reliance or a fraud-on-the-market theory which obviates the need to prove subjective reliance in open market transactions. *Susquehanna Investment Group v. Amgen Boulder, Inc.,* 918 F.Supp. 326, 329 (D.Colo.1996); *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The present case appears to use the fraud-on-the-market theory to establish reliance. As the *Basic* court stated in this connection:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Id.* at 241–42, 108 S.Ct. at 989 (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3rd Cir. 1986)). In essence, the theory is grounded on the assumption that material misstatements are automatically incorporated or built into the price of a security when it is actively traded on an efficient market. *Stinson v.*

*Van Valley Dev. Corp.,* 714 F.Supp. 132, 136 (E.D.Pa.1989) ("the fraud-on-the-market [theory] is said to occur in that the misleading information is assimilated by market mechanisms, resulting in a distorted market price"); *Susquehanna,* 918 F.Supp. at 329 (plaintiffs may rely on the fraud-on-the-market presumption of reliance if they prove purchase of a security and that a material misrepresentation was made concerning the security which resulted in an artificial change in price).

■ When invoked, the fraud-on-the-market theory creates a rebuttable presumption as to the element of reliance, and is particularly relevant in the class action context. *Basic,* 485 U.S. at 248, 108 S.Ct. at 992. That is, "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively would [ ] prevent[ ] [plaintiffs] from proceeding with a class action, since individual issues then would [ ] overwhelm[ ] the common ones." *Basic,* 485 U.S. at 242, 108 S.Ct. at 989; Fed.R.Civ.P. 23(a)(2), (b)(3). However, "[i]n fraud on the market claims, where individual questions of reliance are eliminated, the class action is even more appropriate." *Storage Technology,* 113 F.R.D. at 115.

### C. The Requirements of Rule 23 [3]

#### 1. Numerosity

■ As for the numerosity requirement—Rule 23(a)—the First Amended Complaint is silent as to exactly how many class members exist. However, it does state that, during the class period, over 29 million shares of IntelCom common stock were traded on the American Stock Exchange and that, while the exact number of shares of class members is not determinable without discovery, Plaintiffs believe there are thousands of members of the Class. First Amended Complaint, § 19. Further, Plaintiffs assert that joinder of all class members is impracticable given their number and geographical spread.

For these reasons, I find that Plaintiffs have satisfied the numerosity requirement of

---

**3.** Though Defendants largely fail to address whether particular elements of Rule 23 have been satisfied, the Court nonetheless considers each element since it must independently satisfy itself that a class action is appropriate. *Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372–73.

Rule 23. *See In re Amerifirst Sec. Litig.,* 139 F.R.D. 423, 427 (S.D.Fla.1991) ("the numerosity requirement of Rule 23(a)(1) is generally assumed to have been met in class action suits, such as the one here, involving nationally traded securities"); *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir.1981) (it is reasonable to assume that "any class composed of the sellers of a nationally traded security during a period in which hundreds of thousands ... of shares of the security were traded must necessarily be 'so numerous that joinder of all members is impracticable.'"); *see also Gavron v. Blinder Robinson & Co., Inc.,* 115 F.R.D. 318, 322 (E.D.Pa.1987); *Hawk Indus., Inc. v. Bausch & Lomb, Inc.,* 59 F.R.D. 619, 623 (S.D.N.Y.1973). Other judges of this Court have found that the numerosity element is satisfied in cases similar to this. *Storage Technology,* 113 F.R.D. at 117; *Lerner v. Haimsohn,* 126 F.R.D. 64 (D.Colo. 1989). Further, Defendants do not contest the numerosity requirement.

### 2. *Commonality*

■ Turning to the commonality requirement—Rule 23(a)(2) & 23(b)(3)[4]—Plaintiffs contend that the Complaint spells out a "common course of conduct" affecting the entire class, that the claims arise out of the same set of operative facts and circumstances, and that the claims are based on common legal theories. These common issues include: (1) whether the federal securities laws were violated by Defendants; (2) whether Defendants participated in and pursued the concerted actions complained of; (3) whether the documents, including those disseminated to the investing public during the class period, omitted and/or misrepresented material facts about the business affairs, financial condition and future prospects of IntelCom; (4) whether the Defendants acted willfully or recklessly in omitting to state and/or misrepresenting material facts; (5) whether the market price of IntelCom common stock during the Class Period was artificially inflated due to the disclosure and/or misrepresentations complained of; and (6) whether the members of the class have sustained damages and, if so, what is the proper measure of damages.

■ In making the determination of commonality, all the questions of law or fact at issue need not be common. *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 640 (D.Colo.1986). Rather, the existence of either common questions of law or fact will be deemed sufficient to meet the threshold commonality requirement. *Milonas,* 691 F.2d at 938. Further, factual differences in the claims of the individual class members should not result in a denial of class certification where common questions of law exist. *Id.*

Having reviewed the complaint allegations and considered the arguments advanced in support of the class certification motion, I am satisfied that these claims involve a common scheme affecting the entire class which is the hallmark of securities fraud actions that are certified as class actions. *See Steiner v. Ideal Basic Indus., Inc.,* 127 F.R.D. 192, 194 (D.Colo.1987) ("Although the plaintiffs may have purchased their stock at different times, and relied upon different sources of public information in making their investment decisions, those variations are insufficient to defeat the class on typicality grounds."); *Lerner,* 126 F.R.D. at 65–67; *Blackie,* 524 F.2d at 902–905. This is particularly true where the action sought to be certified, as here, involves allegedly overstated asset values relevant to a fraud-on-the-market theory. *Storage Technology,* 113 F.R.D. at 115. Accordingly, I find that the claims herein form a common nucleus of operative facts that satisfies the commonality and predominance requirements of Rule 23(a)(2) and 23(b)(3).

### 3. *Typicality and Adequacy of Representation*

■ With respect to the requirement of typicality—Rule 23(a)(3)—this Court finds that Plaintiffs in this consolidated action have asserted claims which are typical of the class.

---

**4.** For purposes of discussion, the court treats the commonality prerequisite—Rule 23(a)(2)—as being subsumed within the Rule 23(b)(3) requirement of predominance of common questions. *See Sollenbarger v. Mountain States Tel. & Tel.*

*Co.,* 121 F.R.D. 417, 423 (D.N.M.1988); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1763, at 227 (1986).

The major issue presented is whether the Defendants have violated the federal securities laws. Although certain factual variations may exist among the Plaintiffs' claims, they are insufficient to defeat the class on typicality grounds since issues relating to individual reliance are conditionally eliminated. "The rationale behind the requirement that the class representative's claims be typical of the class claims is recognition that a plaintiff with claims typical of the class will, in pursuing and defending his own self interest in the litigation, be concomitantly advancing or defending the interests of the class." *Dubin v. Miller,* 132 F.R.D. 269, 274 (D.Colo.1990) (citing 1 H. Newberg, *Newberg on Class Actions* § 3.22, at 199 (2d ed.1985)). In essence, the typicality requirement provides a safeguard against intraclass conflicts, ensuring that the named plaintiff's interests are more or less coextensive with those of the class. Here, insofar as the proposed class representatives' claims would seem to mirror those of their classmates, the rationale underlying the typicality requirement is achieved.

■ "The requirement of typicality dovetails into the requirement of adequacy of representation, [Rule 23(a)(4)]. Typicality ensures that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected. Consequently, an important part of typicality is the inquiry into whether the representative's interests or claims are antagonistic or adverse to those of the class." *Edgington,* 139 F.R.D. at 189 (citations omitted). Furthermore,

> Rule 23(a)(4) requires the class representatives to be in a position to protect fairly and adequately the interests of the class. Courts have broken down the requirement into an evaluation of whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation and whether the representative's counsel is competent. Both the class

representative and his or her attorney must have the means and capacity for vigorous prosecution of the class action. (Citations omitted)

*Id.* at 190.

■ More precisely, "[a] finding of adequacy requires a finding that the plaintiffs are knowledgeable as to the status and underlying legal basis of the action, that they are willing and able to pay notification and other costs, that they will diligently pursue their claims, and that their interests are not antagonistic to the interests of the class." *Storage Technology,* 113 F.R.D. at 117. Here, I find that there is no potential conflict between Plaintiffs' interests and those of the class.[5] Also, Plaintiffs' counsel are by all indications both competent and experienced in securities matters. Accordingly, I find that the Plaintiffs and their attorneys will provide adequate representation.

### 4. *Superiority of the Class Action*

■ I next must determine whether the class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). I begin by noting that the superiority of class actions in large securities fraud is well recognized. *See Eisenberg,* 766 F.2d at 785; *Esplin,* 402 F.2d at 100–01. Further, as to the case at bar, I find the reasoning of this Court in *Joseph* particularly appropriate:

> First, relitigation of the same issues and presentation of the same evidence in hundreds of individual actions ... would be grossly inefficient and wasteful of judicial resources. Second, maintenance of individual actions would be prohibitively expensive. Many of the crucial issues in this case will require substantial discovery, expert testimony, and trial time, all of which would render uneconomical individual actions.

109 F.R.D. at 642. Accordingly, I find that the superiority requirement has been met.

---

**5.** In so finding, I recognize that Defendants have pointed to a potential conflict between those class members that purchased IntelCom stock prior to April 7, 1995 and those that purchased

stock on or after April 7, 1995. This conflict is discussed, and rejected by me, in a subsequent section of this opinion.

### 5. *Termination of the Class Period*

██ Finally, I address Defendants' only stated argument in opposition to the motion for class certification. This argument is that class certification should be denied, or at a minimum, the class should be limited to purchasers of IntelCom stock on or before April 7, 1995, because IntelCom disclosed the existence of the FOTI debarment in a press release dated April 6, 1995. The press release also disclosed (1) that FOTI had submitted bids and obtained contracts in violation of the terms of the suspension and debarment; (2) a description of the historical levels of government contracting revenues at FOTI; (3) that FOTI was withdrawing all bids submitted for government contracts, would cease making any further bids and would withdraw any outstanding invoices for government contracting work; (4) that IntelCom was making management changes at FOTI and was considering restructuring its ownership in FOTI; (5) partly as a result of this reorganization and restructuring, a larger than expected second quarter fiscal 1995 loss would occur; and (6) that FOTI and certain of its personnel may be subject to fines, penalties, and criminal prosecution arising from FOTI's actions since the March, 1994 suspension. Defendants assert that such disclosure, which was the subject of much attention in the business press, precludes the establishment of a class beyond the date of that disclosure.

Related to this argument is Defendants' assertion that purchasers of stock on or after April 7, 1995 do not have claims typical of purchasers after April 7, 1995 and cannot adequately represent such subsequent purchasers, relying principally on *In re Seagate Technology II Securities Litigation*, 843 F.Supp. 1341 (N.D.Cal.1994). Specifically, Defendants argue that none of the named plaintiffs has any stake in the issues that would be important to purchasers on or after April 7, 1995. This is because each of the Plaintiffs bought their stock before the April 7 press release, and they all sold their shares after May 16, 1995 or continue to hold them today. Thus, Defendants argue that the named plaintiffs have no incentive to ensure that important issues that divide the proposed class are handled in a way that best serves the interests of the absent class members.

First, I note that the fact that disclosures were made by IntelCom on April 7, 1995 does not and should not defeat class certification as to purchasers of stock before that date. In fact, Defendants have not made any argument as to why purchasers of stock before April 7 should not be certified as a class, including any argument regarding typicality or adequate representation. Thus, as to all purchasers of stock between May 16, 1994 and April 6, 1995, I find that class certification should be granted.

As to purchasers of stock on or after April 7, 1994, Plaintiffs argue that Defendants' efforts to curb the length of the class period is inappropriate at this stage because it is an inquiry into the merits. Plaintiffs further argue that the April 6, 1995 press release which Defendants claim disclosed all relevant facts is itself materially misleading and incomplete as it soft-pedaled the adverse impact FOTI's problems were then having on IntelCom's business, operations and financial condition.

Specifically, the April 6 press release allegedly did not disclose or even hint at the fact that within the next six weeks IntelCom would replace its Chief Executive Officer and restructure its own operations; instead, it impugned only the performance of FOTI and suggested that FOTI would be restructured. The April 6 press release also gave no indication that IntelCom would be forced to postpone a planned $150–$200 million debt offerings. Finally, Plaintiffs assert that the press release portrayed its subsidiary's problems as insignificant to IntelCom's overall business stating, for example, that FOTI's government contract work amounted to less than 1% of IntelCom's revenue for the first half of 1995. Plaintiffs assert that by effectively distancing IntelCom's business from the conduct of FOTI, IntelCom was able to minimize the adverse market reaction to this press release. Plaintiffs contend that it was not until the disclosure of May 10, 1995, announcing the postponement of the debt offering, that investors seriously questioned the integrity and abilities of IntelCom management.

Based on the news release, the price of the stock on May 10 dropped from $10–3/4 share to $7–15/16 per share.

Some courts, in examining class certification, have inquired into whether a class period should be terminated as of the date when "curative information is publicly announced or otherwise disseminated." *In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130, 143–44 (D.N.J.1984); *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 82 (D.Md. 1991); *Lerch v. Citizens First Bancorp*, 144 F.R.D. 247, 253–55 (D.N.J.1992); *In re Consolidated Memorex Sec. Cases*, 61 F.R.D. 88, 95–97 (N.D.Cal.1973); *In re LTV Sec. Litig.*, 88 F.R.D. 134 (N.D.Tex.1980); *Peil v. Nat'l Semiconductor Corp.*, 86 F.R.D. 357 (E.D.Pa. 1980). Other courts, including a court from this Circuit, have held that whether a press release or other document "cured the market" such that the class period should be limited is an impermissible merits inquiry that is expressly barred by the Supreme Court's decision in *Eisen*, 417 U.S. at 177, 94 S.Ct. at 2152. *See In re United Telecommunications*, [1992 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 97,033, 1992 WL 309884 (D.Kan.1992); *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2nd Cir.); *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *In re MDC Holdings Sec. Litig.*, 754 F.Supp. 785, 807 (S.D.Cal.1990); *In re Western Union Sec. Litig.*, 120 F.R.D. 629, 641 (D.N.J.1988); *In re SciMed Sec. Litig.*, [1993–94 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,080 at 98,681, 1993 WL 616692 (D.Minn.1993); *Friedlander v. Barnes*, 104 F.R.D. 417, 421–22 (S.D.N.Y.1984); *In re Victor Technologies Sec. Litig.*, 102 F.R.D. 53, 58 (N.D.Cal.1984), *aff'd*, 792 F.2d 862 (9th Cir.1986).

I do not need to address whether this determination is an inquiry into the merits of the action because I find that, even under the reasoning contained in Defendants' cases, termination of the class period at the April 7, 1995 date suggested by Defendants is inappropriate. Specifically, Plaintiffs have clearly shown a substantial question of fact as to whether the April 6, 1995 press release cured the market or was itself misleading, based on, among other things, the allegations that the press release soft-pedaled the effect of FOTI's debarment on IntelCom and did not disclose the fact that IntelCom would replace its Chief Executive Officer or have to postpone the planned $150–$200 million debt offering.

The cases cited by Defendants make clear that the Court's inquiry into the scope of the class period is limited to "whether the facts which underlie the gravamen of plaintiff's complaint continue to represent a reasonable basis on which an individual purchaser or the market would rely." *Data Access*, 103 F.R.D. at 143. Courts that have engaged in this limited review refuse to narrow the class period if "there is a substantial question of fact as to whether the release had cured the market or was itself misleading." *Kirschner*, 139 F.R.D. at 82. Doubts regarding the reasonableness of the reliance should be resolved in favor of extending the class period. *Data Access, supra*, at 143. Based on the foregoing, I find that terminating the class period as of April 6, 1995 is unwarranted at this phase of the proceeding.

I also reject Defendants' argument that purchasers of stock before April 7, 1995 do not have claims typical of purchasers on or after April 7, 1995 and cannot adequately represent such subsequent purchasers. This argument is based on the rationale of *Seagate II* which I do not find persuasive. Cases from the Tenth Circuit have routinely rejected the contention that timing differences among the class members' purchases preclude a finding of typicality. *See Esplin*, 402 F.2d at 100–01; *Alvardo Partners, L.P. v. Mehta*, [1990–91 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 95,887, 1991 WL 94281 (D.Colo.1991); *Storage Technology*, 113 F.R.D. at 117; *Steiner*, 127 F.R.D. at 194; *Lerner*, 126 F.R.D. at 66.

In support of my holding here, I endorse the following conclusion in *Storage Technology*:

a class action is the better alternative *at this time*. Fed.R.Civ.P. 23(b)(3). The difficulties in class management *which may arise* are not grounds for refusing *now* to certify the class. Management problems which may arise in both pre-trial and trial proceedings may be the subject of further

action by the court under Rules 16, 23(d)(2), 42(b), and 56(d).

113 F.R.D. at 119–20 (emphasis added) (citations omitted); *see also Joseph,* 109 F.R.D. at 638 ("certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses toward resolution on the merits"). Thus, should it appear at a later date that class certification is not appropriate as to purchasers of stock on or after April 7, 1995, the Court can modify the class accordingly.

## V. CONCLUSION

For the reasons discussed above, it is hereby

ORDERED that Plaintiffs' Motion for Class Certification is GRANTED as prescribed, with the Court retaining power to adjust or reconsider its decision pursuant to Rule 23.