**CITY PARTNERSHIP CO., derivatively on behalf of Cable TV Fund 14–B, a Colorado limited partnership, Plaintiff,**

v.

**JONES INTERCABLE, INC., Defendant,**

and

**Cable TV Fund 14–B, a Colorado limited partnership, Nominal Defendant.**

No. CIV.A.99–WM–1051.

United States District Court, D. Colorado.

Sept. 30, 2002.

Robert F. Hill, Jennifer H. Hunt, Hill & Robbins, P.C., Denver, CO, Jeffrey S. Abraham, Abraham & Paskowitz, New York City, for Plaintiff.

Alan M. Loeb, Davis, Graham & Stubbs, LLP, Denver, CO, John Michael Roche, Snell & Wilmer, LLP, Denver, CO, for Defendant.

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

MILLER, District Judge.

This matter is before me on the recommendation of Magistrate Judge Boyd N. Boland, issued August 26, 2002, that plaintiffs' motion for class certification be granted. Defendants Jones Intercable, Inc. and Glenn R. Jones filed timely objections. 28 U.S.C. § 636(b).

I have reviewed *de novo* the portions of the record in these consolidated cases relevant to defendants' specific objections, including the parties' written arguments on the motion for class certification, the transcript of the hearing held before Magistrate Judge Boland on October 17, 2001, the recommendation, defendants' objections, and plaintiffs' memorandum in opposition to the objections. I conclude that the recommendation should be accepted.

A party moving for class certification must demonstrate that all four prerequisites of Fed.R.Civ.P. 23(a) are satisfied:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, the party must satisfy one of the three parts of Rule 23(b). Here, plaintiffs rely on Rule 23(b)(3), requiring the court to find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Defendants challenge the recommendation on two grounds, arguing that the representative plaintiffs will not "fairly and adequately protect the interest of the class" and that a class action is not superior to a derivative action such as that brought by plaintiff City Partnership Company.[1] I accept the recommendation that the remaining requirements of Rule 23(a) have been satisfied.

With regard to whether the representative plaintiffs will fairly and adequately protect the class interests, defendants raised three arguments in their opposition to the motion for class certification: (1) the individual plaintiffs are not sufficiently knowledgeable about or involved in the litigation; (2) the "Madison" plaintiffs (affiliates of Madison Investment Holdings) are arguably subject to a unique defense that does not apply to other class members; and (3) the interests of the Madison plaintiffs are antagonistic to those of other class members.

The portion of the recommendation discussing defendants' arguments on these issues covers approximately thirteen pages. Recommendation at 8–22. In their objections, defendants do not counter the reasoning, or the factual findings supporting the reasoning, of Magistrate Judge Boland with respect to these arguments. Instead, they merely incorporate their relevant portions of their prior written and oral arguments and request that I consider those arguments in my *de novo* determination of these issues. *See* Objections at 15–16. 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b) require *de novo* review of only those portions of proposed findings or recommendations to which specific objection is made. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir.) ("a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court"), *cert. denied*, 519 U.S. 909, 117 S.Ct. 271, 136 L.Ed.2d 194 (1996). Without specific objection to the magistrate judge's handling and distillation of defendants' prior argument, I may conduct such review as I deem appropriate. *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir.1991). I decline to review these particular issues on a full *de novo* basis. Instead, I have reviewed defendants' arguments but nevertheless accept the recommendation's conclusion that the representative plaintiffs will fairly and adequately protect the interest of the class.[2]

---

1.  City Partnership, plaintiff in the lead case (Civil Action No. 99–WM–1051), has not moved for class certification.

2.  I note, as Magistrate Judge Boland did, that granting class certification at this stage of the litigation is not irreversible. Recommendation, at 19.

Defendants do provide specific objections to the recommendation's finding that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). They contend that Magistrate Judge Boland failed to apply the appropriate legal analysis mandated by Rule 23(b)(3), ignored pertinent legal authority, disregarded the business judgment rule and the "unique benefits" of proceeding with a derivative action, and ignored state court precedent on the derivative nature of the claims at issue. Objection at 5.

Defendants argue that Magistrate Judge Boland failed to find both that the class action was the "most fair and efficient procedure" and that a class action was "necessary." The first contention ignores the express language of the recommendation (at page 26, stating that "[t]he most fair and efficient procedure for asserting the direct claims is by means of this class action") and the second misconstrues Tenth Circuit precedent. Although the court in *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 346 (10th Cir.1973), stated in dicta that "the 'need' for class action treatment in a sense may be considered a vital, if not determinative, consideration as need inevitably relates to the problems of superiority, fairness and efficiency," the court did not hold that absent a finding of necessity a motion for class certification could not be granted.

Defendants' remaining arguments are unpersuasive. The "pertinent" legal authority upon which they rely is not binding and is distinguishable; Magistrate Judge Boland did consider the potential difficulties of proceeding with both the class and derivative claims; and defendants have failed to show that the state court rulings, regarding the derivative nature of related claims, is binding on this court.

Accordingly, it is ordered:

1. The recommendation issued by Magistrate Judge Boland on August 26, 2002, is accepted.

2. Plaintiffs' motion for class certification, filed June 1, 2001, is granted.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

BOLAND, United States Magistrate Judge.

This consolidated action is before me for report and recommendation on **Plaintiffs' Motion for Class Certification,** filed June 1, 2001. The motion has been extensively briefed and was the subject of a hearing at which extended arguments were presented. For the reasons stated below, I respectfully RECOMMEND that the Motion for Class Certification be GRANTED.

### FACTS

This is a securities fraud action alleging a violation of section 14(a) of the Williams Act provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). Suit is brought by two entities—Gramercy Park Investments, LP ("Gramercy"), and Cobble Hill Investments LP ("Cobble Hill")—and by eight individuals, all limited partners of record as of the dates of certain proxy statements (the "Proxy Statements") in the following limited partnerships: Cable TV Fund 12–B, Ltd. ("Fund 12–B"); Cable TV Fund 12–C, Ltd. ("Fund 12–C"); Cable TV Fund 12–D, Ltd. ("Fund 12–D"); Cable TV Fund 14–A, Ltd. ("Fund 14–A"); and Cable TV Fund 14–B, Ltd. ("Fund 14–B")(collectively, the "Partnerships"). Jones Intercable, Inc. ("JI" or "General Partner"), is the general partner of the Partnerships, and Glenn R. Jones ("Jones") was, at the relevant time, the controlling shareholder of JI.

The plaintiffs assert claims derivatively and directly. Class certification is sought in connection with claims for violation of Section 14(a), breach of fiduciary duty, and breach of the Partnership Agreement. Motion for Class Certification, p. 2 at n. 1, and p. 9.

The Partnerships were formed for the purposes of acquiring, owning, and operating cable television systems. Pursuant to the Limited Partnership Agreements (the "Partnership Agreements"), the General Partner is prohibited from purchasing a cable system from a Partnership unless the sales price is determined by the average of three separate, independent appraisals.

In 1998 and 1999, JI sought to purchase four cable systems from the Partnerships— the Albuquerque System, the Palmdale System, the Calvert System, and the Littlerock System. The sale of these systems constituted the sale of substantially all of the Partnerships' assets which, under the terms of the Partnership Agreements, required the approval of a majority of the limited partners. Consequently, proxy statements were mailed to the limited partners seeking their consent to the sales. The prices to be paid by JI to the Partnerships for the various Systems were $1,950 per subscriber for the Albuquerque System; $2,175 per subscriber for the Palmdale System; $2,150 per subscriber for the Calvert System; and $1,890 per subscriber for the Littlerock System. Motion for Class Certification, at p. 6.

The plaintiffs summarize the bases of their claims as follows:

> The gravamen of the Complaint is that defendants, ... in liquidating the cable television systems owned by the Partnerships, planned and schemed for the General Partner to acquire the Partnerships' most desirable systems for less than their true value. Defendants accomplished this scheme through false and misleading statements in the Proxy Statements seeking limited partners' approval of the proposed sales of the cable television systems.
>
> \* \* \* \* \* \*
>
> The subject Proxy Statements misrepresented that the year-old appraisals upon which the sales prices were based accurately reflected the current values of the Systems when, in fact, the Systems' values had increased by as much as 40% or more during the relevant periods.
>
> \* \* \* \* \* \*
>
> The proxy statements that defendants disseminated with respect to the Albuquerque System, the Palmdale System, the Littlerock System and the Calvert System were all false and misleading because they failed to disclose that the cable television market had experienced a dramatic upturn since the time of the appraisals upon which the purchase prices were based. A transformation had occurred in the cable industry,

as investors came to believe that the cable television system would become the means to connect the various communications systems of the information age.... Nevertheless, even though the appraisals for reach of the systems were approximately one year old, defendants falsely stated in each proxy that "the assumptions regarding System operations and the cable television marketplace underlying the three appraisals have generally remained unchanged since the date of the appraisals."

Motion for Class Certification, at pp. 4–7.

The plaintiffs also complain that the Proxy Statements failed to disclose that Jones had entered into an agreement with Bell Canada International, Inc. ("BCI"), pursuant to which Jones gave BCI an option (the "Option") to purchase his interest in JI. BCI later transferred its rights in the Option to Comcast Corporation ("Comcast"). The price at which the Option could be exercised was based, in part, on a premium calculated on the market price of JI stock. Comcast exercised the Option and paid Jones "approximately 12.7 times cash flow and $3,230 per subscriber for its JI shares...." *Id.* at p. 7. These events render the Proxy Statements false and misleading, according to the plaintiffs, because:

> [D]efendants concealed the Option transaction from their Limited Partners and thereby concealed the fact that the consideration that Comcast was paying for an interest in JI and its systems was 25–50% higher than what JI was paying the Partnerships for some of the *same systems.* Thus, with respect to each of the proxy statements, defendants misrepresented that the transactions were fair, that market conditions had remained unchanged, that the appraisal process was fairly conducted and that the System sale agreements were favorable to the Limited Partners.

*Id.* at pp. 7–8.

## CLASS ACTIONS GENERALLY

A class action is a unique procedural device designed for the efficient administration of cases where factual and legal issues are common to a class. *In re Intelcom Group,*

*Inc., Securities Litigation,* 169 F.R.D. 142, 144 (D.Colo.1996).

> In general, securities claims are particularly well suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation.

*Id.*

Whether asserting a securities law claim or a claim of any other nature, the party seeking class certification must demonstrate, under a strict burden of proof, that all of the requirements of Fed.R.Civ.P. 23(a) are met. *Rex v. Owens,* 585 F.2d 432, 435 (10th Cir. 1978). Those elements include: (1) a class so numerous that joinder is impractical; (2) common factual and legal questions; (3) representative claims that are typical of the claims of the class; and (4) a representative or representatives that will fairly and adequately protect the interests of the class. *Id.* In addition, at least one element of Rule 23(b) also must be satisfied. *Green v. Nuveen Advisory Corp.,* 186 F.R.D. 486, 493 (N.D.Ill.1999). In this case, the plaintiffs rely on Fed.R.Civ.P. 23(b)(3), which provides:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

When ruling on a motion for class certification, the inquiry is limited to whether the requirements of Rule 23 have been satisfied. *In re Intelcom,* 169 F.R.D. at 145. The allegations of the complaint must be accepted as true, and it is not appropriate to consider the underlying merits of the claim. *Id.* Whether to certify a case as a class action "involves intensely practical considerations, most of which are purely factual or fact-intensive. . . . Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations.'" *Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir.1988) (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 406, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)).

The decision of whether to grant class certification lies within the discretion of the trial judge and will be reversed only upon an abuse of that discretion. *Id.* "There is no abuse of discretion when the trial court 'applies the correct criteria to the facts of the case.'" *Id.* (quoting *Peterson v. Oklahoma City Housing Auth.,* 545 F.2d 1270, 1273 (10th Cir.1976)).

## ANALYSIS

### A. The Requirements of Rule 23(a)

#### 1. Numerosity

█ The defendants do not contest the numerosity requirement. Indeed, the plaintiffs allege, without contradiction, that the proposed class "consists of more than 52,000 limited partners, scattered throughout the United States, holding more than 815,000 units of the Partnerships." Motion for Class Certification, at pp. 12–13. Courts of this district have found the numerosity element satisfied on similar facts. *See In re Intelcom,* 169 F.R.D. at 147–48 (finding that the numerosity requirement of Rule 23(a) is satisfied where there were unspecified "thousands" of class members, and noting that the numerosity requirement generally is assumed to be met in suits involving nationally traded securities); *In re Storage Technology Corp. Securities Litigation,* 113 F.R.D. 113, 117 (D.Colo.1986)("With an estimated several thousand members, the class satisfies the numerosity requirement of Rule 23(a)(1)").

Based on these facts, I find that the plaintiffs have satisfied the numerosity requirement.

#### 2. Commonality

█ Nor do the defendants dispute that there are common factual and legal questions, Rule 23(a)(2), or that those common questions of fact and law predominate over any questions affecting only individual mem-

bers. Rule 23(b)(3).[1] The plaintiffs argue that "[v]irtually all the important questions of fact and law in this action are common to all members of the Class," because (a) the Proxy Statements sent to the limited partners were identical for each respective Partnership and (b) the transactions were approved by the limited partners in each of the Partnerships on the basis of substantially identical omissions and misstatements. Motion for Class Certification at p. 14. The common questions of fact and law include:

(i) Whether the Proxy Statements were false and misleading insofar as they report that "the assumptions regarding System operations and the cable television marketplace underlying the three appraisals have generally remained unchanged since the date of the appraisals;"

(ii) Whether the failure to disclose in the Proxy Statements the existence and terms of the Option constitutes the omission of material information and rendered the Proxy Statements false and misleading;

(iii) Whether there had been a material change in the market for cable systems which, because it was not disclosed in the Proxy Statements, made them false and misleading;

(iv) Whether the defendants engaged in a plan or scheme through, among other things, false and misleading Proxy Statements to enrich themselves at the expense of the limited partners; and

(v) Whether the defendants through the actions alleged in the complaints breached contractual and/or fiduciary duties owed by them to the plaintiffs and to the members of the Class, and/or have aided and abetted in such breaches.

Rule 23 does not require that all questions of law and fact at issue in the case be common to the class. *In re Intelcom*, 169 F.R.D. at 148. To the contrary:

> Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.... [E]very member of the class need not be in a situation identical to that of the named plaintiff[s].

*Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982).

It is apparent from the allegations of the consolidated complaints that the claims asserted here involve alleged material misstatements or omissions common to the entire class. Consequently, I find that the claims arise from a common nucleus of operative facts and satisfy the commonality and predominance requirements or Rules 23(a)(2) and 23(b)(3).

### 3. Typicality and Adequacy of Representation

The defendants mount a substantial challenge to certification of the class on the grounds of typicality and adequacy of representation, raising three arguments. First, the defendants attack the eight individual plaintiffs as "completely dependent on 'class' counsel," and therefore not adequate class representatives. Second, the defendants attack the entity plaintiffs (which they refer to jointly as "Madison"), arguing that they are subject to a unique defense. Finally, the defendants argue that Madison has interests

---

**1.** Rule 23(a)(2) and Rule 23(b)(3) each require the existence of common questions of law and fact. I have considered the requirements of both sections together because, as Professors Wright and Miller state in their treatise on federal civil procedure:

> It should be noted that Rule 23(a)(2) actually may be a superfluous provision, or at least partially redundant, since the existence of common questions can be viewed as an essential ingredient of a finding that the case falls within one of the three categories of class actions described in subdivision (b).... [A]n action is maintainable under Rule 23(b)(3) only if there is a finding that common questions predominate over individual issues. Since this obviously is a more stringent standard than that prescribed by Rule 23(a)(2), subdivision (a)(2) would be satisfied any time the court finds that the subdivision (b)(3) test has been met. Not surprisingly, therefore, a few courts in actions brought under subdivision (b)(3) have not drawn a distinction between the two requirements.

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1763 at p. 227. *Accord In re Intelcom*, 169 F.R.D. at 148 n. 4 ("For purposes of discussion, the court treats the commonality prerequisite—Rule 23(a)(2)—as being subsumed within the Rule 23(b)(3) requirement of predominance of common questions").

which are antagonistic to other class members, which render Madison inadequate class representatives.

Rule 23(a)(3) requires that the claims of the representative parties must be typical of the claims of the proposed class. Rule 23(a)(3) may be used to screen out class actions when the legal or factual positions of the representatives is markedly different from that of other members of the class, even though common issues of law or fact are raised. *Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453, 461 (D.D.C. 1985). In addition:

> [T]he typicality requirement focuses on the representatives' position with respect to the defendants' conduct, and where the representative parties are subject to unique defenses, their claim is not typical of the class. Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff ..., then the named plaintiff is not a proper class representative. It is not necessary that the defense asserted against the putative class representative ultimately succeed. Rather, the presence of even an arguable defense peculiar to the named plaintiff ... may destroy the required typicality of the class, as well as bring into question the named plaintiff's representation.

*Kas*, 105 F.R.D. at 461.

The typicality requirement "also impacts on the requirement of Rule 23(a)(4) that the representative parties adequately protect the interests of the class. If the representatives' claims are not typical of the class, they cannot adequately protect the interests of the absent class members." *Id.* The requirement of typicality dovetails into the requirement of adequacy of representation, as follows:

> Rule 23(a)(4) requires the class representatives to be in a position to protect fairly and adequately the interests of the class.

Courts have broken down the requirement into an evaluation of whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation and whether the representative's counsel is competent.

*In re Intelcom*, 169 F.R.D. at 149 (quoting *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 188 (D.Kan.1991)).[2]

### (a) The Individual Plaintiffs

With respect to the individual plaintiffs, the defendants argue that:

(1) They are relying totally on class counsel and are not personally involved in the litigation, as witnessed by the facts that they are not familiar with the cable Systems at issue in this case; do not know what the Proxy Statements say, have not read the Proxy Statements, and have not formed an opinion about whether the Proxy Statements contain a false statement; and have not made arrangements for the payment of costs of suit nor made any plans to attend the trial; and

(2) They do not recall how (or whether) they voted on the transactions at issue in this case.

■ A finding that a plaintiff is an adequate class representative includes findings "that the plaintiffs are knowledgeable as to the status and underlying legal basis of the action, that they are willing and able to pay notification and other costs, that they will diligently pursue their claims, and that their interests are not antagonistic to the interests of the class." *In re Storage Tech.*, 113 F.R.D. at 117. Plaintiffs may be found to be inadequate representatives where they are not familiar with the basic elements of their claims, *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153–54 (N.D.Cal.1991); have an almost total lack of personal knowledge of their claims, *Kelley v. Mid–America Racing Stables, Inc.*, 139

---

**2.** There is no challenge here to the competency of plaintiffs' counsel, and I find that the plaintiffs' counsel is competent and experienced. The thrust of the defendants' adequacy of representation argument is directed against the representative parties themselves and whether the in-dividuals are sufficiently committed to the case, whether there is a unique defense available against Madison, and whether a conflict exists between Madison and all other members of the class.

F.R.D. 405, 410 (W.D.Okla.1990); or have afforded their attorneys unfettered discretion to conduct the litigation. *Beck v. Status Game Corp.*, 1995 WL 422067 at *6–7 (S.D.N.Y. July 14, 1995).

On the other hand:

> [T]he adequacy of representation test is not concerned with whether the plaintiff personally derived the information pleaded in the Complaint or whether the plaintiff will personally be able to assist Counsel. Whether or not the class representative is familiar with the specifics of the complaint is not dispositive of the more critical question of whether that individual will adequately represent the claims of the class by devoting time and effort to the lawsuit.

*In re Southeast Hotel Properties Limited Partnership Investor Litigation,* 151 F.R.D. 597, 607 (W.D.N.C.1993).

■ In order to resolve the issue of the adequacy of the representation offered by the individual plaintiffs, I have reviewed the portions of deposition testimony which were provided to me as exhibits to the various briefs filed by the parties. From that review, I have determined the following:

**William B. Barzler** [3] is aware that the Littlerock cable system at issue in this case is located in California, Plaintiffs' Exhibits, Exh. B at p. 22; that JI purchased the Littlerock System from Fund 14–B, *id.* at p. 23; that the complaint filed on his behalf has been consolidated with other complaints relating to the sale of other Systems, although he did not know how many complaints had been consolidated, *id.* at p. 30; that the action includes both class action claims and derivative claims, and he had a reasonable understanding of the differences between the two, *id.* at pp. 43–44; and he knows of the plaintiff City Partnership Company. *Id.* at

p. 44. In preparation for his deposition, Mr. Barzler read the complaint in this action and various other documents, *id.* at pp. 9–10, 44; and spent approximately four hours with his lawyer in preparation for his deposition. *Id.* at p. 10.

**Geraldine Lucas** [4] has read the complaint filed on her behalf, JI Opposition, Exh. 26 at p. 8; met with her lawyer in order to prepare for her deposition, *id.* at p. 85; and is willing to travel to Colorado as requested by her lawyer. Plaintiffs' Exhibits, Exh. C at p. 48. In addition, she generally is aware of the various Funds involved in this litigation, *id.* at p. 38; is aware that she holds an interest only in Fund 14–B, *id.;* and is aware that related suits have been brought against JI, some as class action claims and others derivatively. *Id.* at pp. 51–53.

**Robert Margolin** [5] prepared for his deposition by reading "the prospectus for Cable TV Fund 12" and meeting with his lawyer, Plaintiffs' Exhibits, Exh. E at p. 5. Mr. Margolin met with counsel prior to the filing of the complaint, JI Opposition, Exh. E at p. 55, but he does not intend to attend the trial if it is held in Colorado. *Id.* at pp. 108–09. He leaves the substantive aspects of the case and its day-to-day management to his lawyers. Plaintiffs' Exhibits, Exh. E at p. 97. Mr. Margolin is aware that his investment was in Fund 12–B which held an ownership interest in the Albuquerque and Palmdale Systems, and that the limited partners of Funds 12–C and 12–D also held ownership interests in the Albuquerque and Palmdale Systems. *Id.* at pp. 40–41.

**Charles McKenzie** [6] read the complaint before it was filed and prior to his deposition. Plaintiffs' Exhibits, Exh. F at pp. 57, 60. He has made no arrangement for the payment of the costs of suit. *Id.* at p. 59. He is aware that he invested in Cable Fund 14–A. *Id.* at

3. Portions of Mr. Barzler's deposition transcript were supplied as Exh. 28 to Defendant Jones Intercable Inc.'s Brief In Opposition to Plaintiffs' Motion for Class Certification ("JI Opposition"), filed August 1, 2001; and as Exh. B to Exhibits to Plaintiffs' Reply Memorandum of Law In Further Support of Plaintiffs' Motion for Class Certification ("Plaintiffs' Exhibits"), filed August 23, 2001.

4. Portions of Ms. Lucas' deposition transcript were supplied as Exh. 26 to the JI Opposition; and as Exh. C to the Plaintiffs' Exhibits.

5. Portions of Mr. Margolin's deposition transcript were supplied as Exh. 22 to the JI Opposition; and as Exh. E to the Plaintiffs' Exhibits.

6. Portions of Mr. McKenzie's deposition transcript were supplied as Exh. 25 to the JI Opposition; and as Exh. F to the Plaintiffs' Exhibits.

p. 59. Mr. McKenzie is aware that Cable Fund 14–A had an ownership interest in the Calvert System, *id.* at p. 66, and is of the opinion that the Proxy Statement was misleading because of the "lapse in time between the appraisals and the sale." *Id.* at p. 68.

Mary Schumacher[7] has read the complaint and is aware that it is a class action, Plaintiffs' Exhibits, Exh. G at p. 49; she is aware that the lawsuit involves four cable Systems and knows the names of three of them, JI Opposition, Exh. 24 at p. 46; she believes that she can represent the interests of limited partners in partnerships other than the one she invested in because "the circumstances were so similar in each partnership, the way it was handled; it was like reading the same chapter over and over with just a different name." Plaintiffs' Exhibits, Exh. G at pp. 49–50. She has made no arrangement for the payment of the costs of suit. *Id.* at p. 43.

Sheryle Trainer[8] wants to be a plaintiff in this action, Plaintiffs' Exhibits, Exh. H at p. 75, because "there seems to be a misrepresentation of the proxy information and the appraisal value that was given, that it was really worth a lot more than what it had been sold for or what it was worth at the time of the appraisal, because the appraisal was done a year before the actual sale." *Id.* at p. 79. She has had a number of "lengthy" telephone conversations with her lawyer, the number of which she estimates in the range of three or four, *id.* at p. 91, to as many as "at least ten." *Id.* at p. 92. She has met with her lawyer on three occasions, *id.* at p. 91, and has corresponded in writing. *Id.* at p. 92. She is "leaving the substantive aspects of this lawsuit and knowledge about the status and claims" to her lawyer, however, JI Opposition, Exh. 27 at p. 78, and she has made no specific arrangements for the payment of the costs of suit. *Id.* at p. 83.

Henry and Joan Wahlgren:[9] Henry Wahlgren initiated his involvement in this lawsuit by answering an advertisement in the *Chicago Tribune.* Plaintiffs' Exhibits, Exh. D at p. 28. He met with his lawyers approximately six times for a total of about one hour prior to the filing of the complaint, and he specifically authorized the filing of the complaint. *Id.* at pp. 62–63. He met with his lawyer for approximately one and one-half hours before his deposition, and he reviewed documents to prepare for his deposition. *Id.* at pp. 3–4. Mr. Wahlgren does not know the difference between a class claim and a derivative claim. *Id.* at p. 38.

Based upon the information supplied to me and summarized above, I conclude that the individual plaintiffs are adequate class representatives. The defendants have not provided any evidence of nor do they argue that the individual plaintiffs have any interests antagonistic to the rest of the class. Moreover, the evidence persuades me that the plaintiffs have the commitment and ability to, and will devote the time necessary to, prosecute the action vigorously. In stark contrast to the cases relied on by the defendants in support of their position that the individual plaintiffs are inadequate class representatives, these plaintiffs have not granted their counsel "unfettered discretion" to conduct the litigation as that counsel may see fit, the plaintiffs reviewed the complaint before it was filed, and the plaintiffs have had communications with their lawyers throughout the course of the litigation. *Compare Beck,* 1995 WL 422067 at *6–7 (S.D.N.Y. July 14, 1995). The plaintiffs are familiar in general terms with the facts underlying their claims, are familiar with the basic elements of their claims, and cannot be characterized as "alarmingly unfamiliar" with the suit. *Compare Burkhalter Travel,* 141 F.R.D. at 153–54; *Kelley,* 139 F.R.D. at 409–10.

Nor will I ignore the presence of two institutional plaintiffs who bring substantially greater expertise and resources to the case as class representatives. The defendants do

---

7. Portions of Ms. Schumacher's deposition transcript were supplied as Exh. 24 to the JI Opposition; and as Exh. G to the Plaintiffs' Exhibits.

8. Portions of Ms. Trainer's deposition transcript were supplied as Exh. 27 to the JI Opposition; and as Exh. H to the Plaintiffs' Exhibits.

9. Portions of Mr. Wahlgren's deposition transcript were supplied as Exh. 23 to the JI Opposition; and as Exh. D to the Plaintiffs' Exhibits.

not challenge the adequacy of the representation offered by the Madison plaintiffs based on knowledge, expertise, involvement, or the ability to pay the costs of suit. To the contrary, the Madison plaintiffs are institutional investors that appear to have sophisticated management with a complete understanding of the issues in this litigation, and the desire and ability to pursue the claims vigorously and through competent, experienced counsel. Consequently, although I find the individual plaintiffs to be adequate class representatives in their own right, they certainly are so when considered in combination with the Madison plaintiffs.

### (b) The Madison Plaintiffs: Unique Defenses

■ The defendants next argue that the Madison plaintiffs are inadequate and atypical class representatives because they are arguably subject to a unique defense that does not apply to other class members, as follows:

> Madison's business was to purchase, for its own investors, limited partnership units from individual limited partners at steep discounts.... Madison, in order to obtain lists of the individual limited partners in the cable TV Funds here so that it could solicit them to sell their units, gave away its right to vote independently when it agreed to "vote all of its limited partnership interests in the Partnership in the same manner as the majority of all other limited partners who vote on any such proposal or issue."
>
> Section 14(a) of the Exchange Act was enacted to protect "the free exercise of the voting rights of stockholders." The only possible rationale for a direct § 14(a) claim is to effectuate the right to vote without being misled. Hence, § 14(a) provides no protection to those who do not have an effective right to vote.

JI Opposition at p. 10 (internal citations omitted).

The standard to be applied in determining whether a purported class representative's claims are adequate and typical was succinctly stated in *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 59 (2d Cir.2000)(quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990)):

> "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses *which threaten to become the focus of the litigation*."

(Emphasis added.) *Accord Masri v. Wakefield*, 106 F.R.D. 322, 325 (D.Colo.1984)(stating that where a putative class representative is subject to a unique defense "[t]here is concern that the representation of the class will suffer as the representative becomes distracted by the presence of possible defenses applicable only to him").

In my view, the fact that the Madison plaintiffs contracted away their right to vote independently does not disqualify them from serving as class representatives. My decision is guided primarily by the fact that individual, subjective reliance by a plaintiff on an alleged misstatement or omission in a proxy statement is not required to state a claim under § 14(a). As the Supreme Court ruled in *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 384–85, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970):

> Where the misstatement or omission in a proxy statement has been shown to be "material," ... that determination itself indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. This requirement that the defect have a significant propensity to affect the voting process ... adequately serves the purpose of ensuring that a cause of action cannot be established by proof of a defect so trivial, or so unrelated to the transaction for which approval is sought, that correction of the defect or imposition of liability would not further the interests protected by § 14(a).
>
> There is no need to supplement this requirement ... with a requirement of proof of whether the defect actually had a deci-

sive effect on the voting. Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if ... he proves that the proxy solicitation itself, rather then the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.

Because the plaintiffs are not required to show subjective reliance, it is irrelevant whether they relied on the alleged misstatements or omissions, and it seems to me likewise to be irrelevant whether the plaintiffs voted for or against the transactions at issue; whether they voted at all on the transaction; or whether they had the right to vote independently on the transaction. To assure the protections contemplated by § 14(a), the Supreme Court has ruled that it is sufficient that the alleged misstatement or omission was material. What was done as a result of that defective information is not a part of any action under § 14(a). *See Hershfang v. Knotter*, 562 F.Supp. 393, 398 (E.D.Va.1983), *aff'd* 725 F.2d 675 (4th Cir.1984)(holding that a plaintiff may assert a § 14(a) claim even in the absence of any subjective reliance on the allegedly false and misleading proxy and stating: "[T]he nature of a § 14(a) violation is broad: 'the deception of others by the alleged material omissions in the ... proxy statement may have caused damage to plaintiff by misleading others into voting to approve the [transaction] at an allegedly unfair price'").

Because it is irrelevant to the issues of the § 14(a) claim whether any particular member of the class relied on the proxy information; voted for or against the challenged transaction; or voted at all in connection with the challenged transaction, I conclude that the issue of the status of the Madison plaintiffs' voting rights does not raise a unique defense that disqualifies them from acting as class representatives. Whether the Madison plaintiffs could or did vote in a certain way is not an issue in the case and therefore is not a defense—unique or class-wide; meritorious, arguable, or otherwise.

The defendants reliance on *7547 Corp. v. Parker & Parsley Development Partners*, *L.P.*, 38 F.3d 211 (5th Cir.1994), for a contrary result is misplaced. Properly read, *7547 Corp.* stands for the unremarkable proposition that any party who was eligible to vote has standing to maintain a § 14(a) action, while the rest of the world, which had no right to vote, has no such standing:

> We cannot believe that the Supreme Court, in finding a private right of action under section 14(a), ... intended to open a Pandora's box by extending that right to any person potentially injured by a proxy statement; otherwise, standing could be justified for disappointed potential merger partners, disgruntled employees, etc. Accordingly, we are unwilling to expand standing under section 14(a) of the Exchange Act to interest-holders who are not qualified to vote.

*Id.* at p. 230.

In this case, as distinguished from the plaintiffs in *7547 Corp.*, there is no dispute that the Madison plaintiffs were eligible to vote. The fact that their vote could not be independently exercised does not diminish the alleged injury suffered by the Madison plaintiffs and cognizable under § 14(a) because other unitholders may have been misled by the proxy statement. *Id.*

Finally, as noted in *Queen Uno Ltd. Partnership v. Coeur D'Alene Mines Corp.*, 183 F.R.D. 687, 690 (D.Colo.1998), granting class action certification is not irreversible and may be altered or amended before any decision on the merits is reached. Consequently, should future events prove me wrong and the issue of the status of the Madison plaintiffs' voting rights arise in a manner appropriate for consideration, the issue of class certification may be revisited as necessary. *Id.* (stating that "the action always can be decertified or the class description altered if later events suggest it is appropriate to do so").

### (c) The Madison Plaintiffs: Antagonism

▬ The defendants claim that the Madison plaintiffs have interests antagonistic to other members of the putative class and therefore are inadequate class representatives based on the following argument:

Madison's business was to persuade individual limited partners who needed fast cash to sell units for "less than [their] worth.... Madison did so here be sending out letters to other limited partners that were intended to cause unsophisticated investors (whom Madison now says it wants to represent) to sell their units cheap."

\* \* \* \* \* \*

In order for the class to prevail on their Section 14(a) claims, the plaintiffs must demonstrate, *inter alia,* that the defendant's failures in the proxies to disclose the allegedly favorable developments in the cable television marketplace set forth in the Complaints (as well as the Jones/Comcast Option Agreement described therein) were "material" and "important" omissions. Yet Madison itself repeatedly decided that *the exact same information*—which was contemporaneously known by Madison—was *not* important enough to share with the same "class" of unitholders when (a) Madison sought to buy units from them at a discount, and (b) they were voting on whether to approve the system sales—votes that would directly affect Madison's own financial interests.

\* \* \*. \* \* \*

Given Madison's own conduct, it is clearly not an "adequate" representative to be pressing, on behalf of the class, the claim that the omitted information *was* so "important" or "material" that it was *fraud* for Jones not to disclose it.

JI Opposition, at pp. 12–14 (internal citations omitted; original emphasis).

So far as I am aware, in an arm's length transaction not involving special duties such as those imposed by § 14(a), there is nothing improper about a purchaser attempting to negotiate the lowest price possible and the seller attempting to negotiate the highest price possible. There is nothing improper about a purchaser of illiquid assets discounting its offering price because of the absence of a ready market for the assets. Significantly, the defendants do not argue that the Madison plaintiffs breached any duty to the potential sellers through Madison's alleged failure to disclose facts in connection with their attempts to buy units at a discount.

Although a putative representative cannot adequately protect a class if its interests are antagonistic to or in conflict with the objectives of the class members, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1768 at pp. 326–27. For example, a conflict among putative representatives and the class sufficient to disqualify the representatives existed in *Cherokee Nation of Oklahoma v. United States,* 199 F.R.D. 357, 365–66 (E.D.Okla.2001), where each of several Indian tribes had separately negotiated contracts which could be separately enforced under different terms:

It is clear that the named plaintiffs [putative class representatives] have financial incentive to pursue their own claims, but because of the nature of a limited amount of money available to pay those claims, the court fails to see how the named plaintiffs have any incentive to vigorously pursue the claims of the proposed class members. It seems to this court each tribe has a great interest in individual litigation to aggressively protect and defend their interest under their individual contracts.

By contrast, no antagonism disqualifying a class representative existed in *Blakely v. Lisac,* 357 F.Supp. 255, 261 (D.Or.1972), where the representative made a net profit on a misrepresented transaction, based merely on that factual distinction, the court reasoning:

Kolousek is the only named plaintiff who purchased stock in reliance on the offering prospectus. Defendants challenge him as an adequate representative for any class of stockholders. Kolousek bought 1,000 shares on the original offering for $1,000. Later, he sold 400 shares for $1,700. Even though he retained 600 shares which became worthless, he made a net profit of $700. Defendants assert that it would be "bad policy" to permit an individual to sue in a representative capacity under Rule 10b–5 when he has made an overall profit

on the stock which he claims he was fraudulently induced to buy. I disagree.

\* \* \* \* \* \*

[T]here is nothing in his position which would make his interest antagonistic to the remaining members of the class.

Although the Madison plaintiffs may previously have engaged in lawful business conduct to acquire the interests of other class members at the lowest price possible, that conduct does not go to the subject matter of this litigation, which is the defendants breach of their duty to issue a proxy statement which was not false and misleading. Nor is there any direct antagonism between the Madison plaintiffs and other class members, as was present in the *Cherokee Nation* case.

I find that the Madison plaintiffs are adequate class representatives.

**B. The Requirements of Rule 23(b): Superiority**

■ The defendants strenuously urge that class certification be denied because the plaintiffs have failed to demonstrate that a class action is superior to the shareholder derivatively action already pending. They argue:

The Tenth Circuit has squarely held that under Rule 23(b)(3), a plaintiff must prove that the class action mechanism is the "*most* fair and efficient procedure" available for dealing with the claims presented. [Citing *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336 (10th Cir.1973).] Whether there is a "need" for a class action is the "vital, if not determinative, consideration," and the trial judge has broad discretion in making this determination.

\* \* \* \* \* \*

[C]ourts asked to determine whether an action should proceed as a class action are *not* limited to comparing a class action to the alternative of multiple individual suits, but can and must consider *other* available methods for the "fair and efficient adjudication of the controversy"—specifically including the option of asserting the claims *derivatively*. For example, in *King v. Kansas City Southern Indus., Inc.*, 519

F.2d 20 (7th Cir.1975), the Seventh Circuit held that the lower court properly denied class certification where an already pending derivative action could provide the plaintiffs with full and complete relief without the complications posed by a procedurally complex, parallel class action.

JI Opposition, at pp. 16–17.

In support of their assertion that a class action is not the superior method for proceeding, the defendants advance three arguments: (1) the claims are derivative and the plaintiffs can obtain all of the relief they seek by proceeding derivatively, *id.* at p. 17; (2) a class action introduces needless complexity into the suit, *id.* at p. 18; and (3) a derivative action is fair and efficient, if not the preferred, procedure. *Id.* at p. 19.

**1. The § 14(a) Claims**

To begin, the Supreme Court has made clear that § 14(a) claims may be asserted either directly or derivatively. *J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)(holding that "a right of action [under § 14(a)] exists as to both derivative and direct causes"). Moreover, it is not unusual for a court to allow these claims to proceed by class action and derivatively at the same time. *See, e.g., In re Dayco Corp. Derivative Securities Litigation*, 102 F.R.D. 624, 630 (S.D.Ohio 1984)(adopting, in the context of an action under § 14(a), the "virtually unanimous" rule that "one counsel can represent a stockholder bringing *both* an individual *and* a derivative action"); *In re Trans-Ocean Tender Offer Securities Litigation*, 455 F.Supp. 999,1014 (N.D.Ill.1978)(same).

On the second point, the defendants identify the following added complexities resulting from proceeding by class action: (1) the necessity of certifying a class; (2) the expense of class notification; (3) dealing with the asserted conflicts, antagonisms, and unique defenses relating to the Madison plaintiffs; (4) calculating damages to individual class members; and (5) "duplication and confusion inherent in the simultaneous prosecution to a jury of a class action and a derivative action that assert the identical substantive claims. . . ." Defendant Glenn R. Jones' Brief

In Opposition to Plaintiffs' Motion for Class Certification ("Jones Opposition"), at pp. 4–5; JI Opposition, at pp. 18–19.

The added complexities asserted by the defendants merely are characteristics of a class action and, if accepted as a basis for refusing class certification, would render the remedial procedures of Rule 23 meaningless. Of course in every class action the court must grapple with the issues of class certification, class notification, and the adequacy of the class representatives. Those issues cannot make a class action inferior or, by definition, a class action would never proceed. And in this case, I already have rejected the defendants arguments that the individual plaintiffs and Madison are inadequate class representatives.

I am not persuaded that there are any particular difficulties attendant to calculating the damages to individual class members, and the defendants have not elaborated what those difficulties might be. Here, the alleged injury to each class member is the same—false and misleading proxy statements resulting in the improper approval of the sale of partnership assets at unfair prices. The division of damages would appear to be relatively straight-forward—value the Systems properly and award each unit owner his, her, or its proportional share of the value based on the number of units owned.

Finally, without some detailed explanation of the "confusion inherent in the simultaneous prosecution" of class and derivative claims, I do not find that anticipated problem sufficient to deny class certification. In any event, here as in *In re Intelcom*, 169 F.R.D. at 151:

> [A] class action is the better alternative *at this time*. The difficulties in class management *which may arise* are not grounds for refusing *now* to certify the class. Management problems which may arise in both pre-trial and trial proceedings may be the subject of further action by the court. . . .

(Internal citations omitted; quoting *In re Storage Technology*, 113 F.R.D. at 119–20.)

The circuit court identified, in *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir.1968), four non-exhaustive factors to be weighed by the trial court in determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy:

> [T]he interest of the class members in individually controlling separate suits, the extent and nature of litigation already pending, the desirability of concentrating litigation in a particular forum, and the difficulties likely to be encountered in managing a class action.

*Id.* at p. 99 n. 7.

Applying those factors here leads me to the conclusion that this case is appropriate for class action treatment. First, this is a securities fraud case involving a large number of unit owners (approximately 52,000), many with a relatively small stake in the outcome. Consequently, this case falls within that category of securities fraud cases "particularly well suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation." *In re Intelcom*, 169 F.R.D. at 144. In these circumstances, there is no particular interest in the class members controlling numerous separate suits which would likely be scattered across the country. The first and third factors of *Esplin* tip decidedly in favor of allowing the case to proceed by class action in a single forum.

I am not aware of any competing direct suits which will be adversely affected by certification of a class action here. There are, of course, derivative claims asserted by these and other plaintiffs, but all of those claims have been consolidated here. Although the defendants argue generally that there will be duplication and confusion arising from the simultaneous presentation of direct and derivative claims, they have not specified what the duplication and confusion is and I am unable to divine it on my own. Consequently, I conclude that the second and fourth *Esplin* factors also favor certifying a class action.

I conclude that direct claims are not required to be brought derivatively. Because the plaintiffs have direct claims against the

defendants under § 14(a), they may assert them directly. The most fair and efficient procedure for asserting the direct claims is by means of this class action. The defendants superiority argument is rejected.

### 2. The State Law Claims

Finally, JI argues in one paragraph and one footnote of its 20 page brief that the state law claims for breach of fiduciary duty and breach of the partnership agreement must be brought derivatively:

> [T]wo Colorado courts which previously examined plaintiffs' claims have determined that their complaint is, at bottom, derivative in nature. The City Partnership plaintiff originally brought its claims as class actions in Colorado state courts in Arapahoe County. The defendants moved to dismiss those cases on the grounds that the claims were derivative and could not be brought directly or as class actions.

JI Opposition, at pp. 4–5. The state district judges agreed and dismissed the cases. *Id.* at p. 5 and Exhs. 8 and 9. And at footnote 8 on page 17 of its opposition, JI argues that because Colorado district courts have twice concluded that the state court claims must be brought derivatively, I must follow those decisions.

The argument has not been adequately developed and therefore is rejected. The complaints filed in the state district courts are not before me; nor are the legal arguments that persuaded the state judges that the state claims must be pursued derivatively presented here. As the plaintiffs point out in their response brief, for example, it is difficult to understand how the state law breach of contract claim may be brought derivatively since the limited partners are parties to the Partnership Agreements, but the Partnerships are not. Plaintiffs' Reply, at p. 4.

### CONCLUSION

For the reasons discussed,

I respectfully RECOMMEND that the Plaintiffs' Motion for Class Certification be GRANTED.

I further RECOMMEND that a single class be defined as follows:

All of the limited partners of the Partnerships as of the following dates:

Fund 12–B:  May 12, 1998 (for the Albuquerque System)
November 23, 1998 (for the Palmdale System)

Fund 12–C:  May 12, 1998 (for the Albuquerque System)
November 23, 1998 (for the Palmdale System)

Fund 12–D:  May 12, 1998 (for the Albuquerque System)
November 23, 1998 (for the Palmdale System)

Fund 14–A:  March 11, 1999 (for the Calvert System)

Fund 14–B:  December 21, 1998 (for the Littlerock System).

I further RECOMMEND that the eight individual. plaintiffs—William Barzler, Geraldine Lucas, Robert Margolin, Charles McKenzie, Mary Schumacher, Sheryle Trainer, and Henry and Joan Wahlgren—and the two entity plaintiffs—Gramercy Park Investments, LP; and Cobble Hill Investments, LP—serve as class representatives for the entire class.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 148–53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colorado Dept. of Corrections,* 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10th Cir.1996).

Dated: Aug.23, 2002.